UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAWNA L. KEISLER, )<br>         Plaintiff, )<br>                                       )<br>    vs.                                )     1:06-cv-0912-LJM-WTL<br>                                       )<br>ENCORE RECEIVABLE MANAGEMENT, )<br>INC., a Kansas Corporation, )<br>         Defendant. ) | |

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause is now before the Court on summary judgment motions filed by both plaintiff, Dawna L. Keisler ("Keisler"), and defendant, Encore Receivable Management, Inc. ("Encore"), on Keisler's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

For the following reasons the Court **DENIES** Keisler's Motion for Summary Judgment and **GRANTS in part and DENIES in part** Encore's Cross Motion for Summary Judgment.

## I. BACKGROUND

This Court has federal question jurisdiction over Keisler's claims pursuant to § 1692k(d) of the FDCPA and 28 U.S.C. § 1331. Venue is proper in this district because the alleged acts and transactions occurred here, Keisler resides in the Southern District of Indiana and Encore transacts business here. Pl.'s Stmt. of Facts ¶ 2.

Encore is a Kansas corporation that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect or attempt to collect delinquent consumer debts, including delinquent consumer debts in the Southern District of Indiana.

Pl.'s Stmt. of Facts ¶ 4. It was acting as a debt collector as to the delinquent consumer debt that is at issue in this case. *Id.*

In 2005, Keisler fell behind in paying a debt she owed to Bank of America ("BOA") on account number xxxx-xxxx-xxxx-1062. Pl.'s Stmt. of Facts ¶ 5; Def.'s Ex. I. In mid-November 2005, Keisler had repeated telephone contact with BOA during which she informed BOA that she was ill and unable to pay her debt. Keisler Decl. ¶ 3. *See also* Messina Aff. ¶¶ 2-4 & Exs A & B. Keisler declares that she told BOA that she was either going to enroll in a credit counseling service, obtain a new mortgage or file bankruptcy. *Id.*

By letter dated January 10, 2006, Keisler received a notice from Penncro Associates ("Penncro") advising her that Penncro was collecting the debt on behalf of BOA, the original creditor. Def.'s Ex. A. Penncro is not associated with or have an agreement with Encore. Young Aff. ¶ 21.

Apparently, on or about February 7, 2006, Keisler told BOA that she intended to file for Chapter 7 bankruptcy protection and that her attorney was Steven J. Halbert. Messina Aff. ¶ 4 & Exs. A & B.

On February 15, 2006, Keisler filed a Chapter 7 Petition in Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana; the cause was styled *In re: Keisler*, S.D. Ind. Bankr. No. 06-00495-AJM-7. Am. Compl. Ex. B. On her petition, Keisler listed "Pencro Associates," Account No. xxxx-xxxx-xxxx-1062 as an unsecured creditor. *Id.* According to the Bankruptcy Court's Certificate of Service, "Pencro Associates, PO Box 1209, Oaks, PA 19456-1209," received notice of Keisler's bankruptcy. Am. Compl. Ex. C.

On April 12, 2006, at approximately 6:47 a.m., Encore received Keisler's BOA account for collection in an electronic batch download from BOA with a summary of account information in the daily batch file for Encore. Def.'s Ex. H, #3; Young Aff. ¶ 9. The batch download did not include text files from BOA for Keisler's account. Def.'s Ex. H, #3. Moreover, there were no notations from BOA in this download to indicate that Keisler had filed bankruptcy or was represented by counsel. *Id.*; Young Aff. ¶¶ 10-12; Young Dep. at 84. Rather, the download file contained essential summary information on the account to be collected such as the debtor's name, address, account number, phone numbers (if any), outstanding balance and charge off date. Def.'s Ex. H, #3.

Within eight minutes of receiving Keisler's account for collection, Encore's computer system automatically requested that a validation letter be generated for Keisler's account at the address provided by BOA in the amount of $9,187.23. Def.'s Ex. H, #3; Young Dep. at 61-64. This process occurs for all accounts Encore receives from BOA. Def.'s Ex. H, #3, Young Dep. at 26-27. These requests are then sent to Encore's letter vendor via another batch file. Def.'s Ex. H, #3; Young Dep. at 26-27. However, if BOA coded an account subject to bankruptcy with a particular work state number, that account would not be sent in the daily batch file to Encore and could not be accessed by Encore's telephone dialer or letter generator. Def.'s Ex. H, #3; Young Dep. at 59; Tucker Dep. at 7-8. Generally, if an account is sent to Encore from BOA, an Encore collector would be able to access more detailed account information from the BOA host system from the collector's desktop computer by following the steps in a BOA training manual. Def.'s Ex. H, #3; Young Dep. at 44-45, 75-76, 87-89; Def.'s Ex. O.

Apparently on the afternoon of April 12, 2006, BOA received notice that Keisler had filed a petition for bankruptcy and that her attorney for the bankruptcy was Steven J. Halbert. Def.'s Ex. F, Ex. B. BOA's notes also indicate a telephone number for Mr. Halbert. *Id.*

On April 13, 2006, at approximately 6:01 a.m., Encore's third-party letter vendor printed and mailed a validation letter to Keisler. Def.'s Ex. H, #3; Young Dep. at 26-27. The validation letter stated, in relevant part:

> The above referenced account has been referred to our office for collection. Previous attempts have been made by our client to resolve this debt voluntarily. As of this date, those attempts have been ignored.
>
> Encore Receivable Management, Inc. has been authorized by our client to resolve this debt and we are committed to provide the necessary effort to properly collect this debt. We recommend that you take advantage of this opportunity to pay the minimum amount due to prevent further collection activity.
>
> Please detach the lower portion of this notice and return with your payment in the enclosed envelope.
>
> Note: If payment has already been made, please notify this office at (877) 409-2086 to avoid further communications.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. As required by federal law, we are advising you of your right to know. We are a debt collector attempting to collect a debt any information obtained will be used for that purpose.

Def.'s Ex. I.

Also on April 13, 2006, Encore did not receive Keisler's account in the next batch download from BOA. Def.'s Ex. H, #3; Young Dep. at 70. Encore received this batch download at approximately 6:47 a.m. Def.'s Ex. H, #3; Young Dep. at 26-27.

Because Encore did not receive Keisler's account from any batch download after the April 12, 2006, download, the only activity on Keisler's account was the validation letter. Def.'s Ex. H, #3; Young Dep. at 83.

On April 20, 2006, Keisler contacted Encore via telephone and informed Encore that the debt was not subject to collection because she was seeking to discharge the debt in her bankruptcy proceedings. Young Aff. ¶ 16. At that point, Encore immediately coded Keisler's account for bankruptcy and ceased all activity on that account. *Id.* ¶¶ 16-17.

## II. SUMMARY JUDGMENT STANDARD

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the nonmoving party fails to establish the existence of an element essential to his case,


one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. DISCUSSION

Keisler argues that Encore's validation letter violated the FDCPA by using a false, and/or deceptive or misleading means to collect a debt, include the use both of false statements and collecting a debt subject to a bankruptcy proceeding. *See* 15 U.S.C. § 1692e. Specifically, Keisler did not owe the debt as of April 13, 2006, because she had already filed bankruptcy. Moreover, the validation letter falsely stated that she had ignored previous attempts by BOA to resolve the debt, when in fact, Keisler had discussed with BOA the ways in which she intended to resolve it. Furthermore, Keisler contends that Encore violated the FDCPA by communicating with her even though it knew she was represented by an attorney with respect to the debt, or could easily ascertain Keisler's attorney's name and address. *See* 15 U.S.C. § 1692c(a)(2). Finally, Keisler asserts that the bona fide error defense is unavailable to Encore because its procedures are not reasonably designed to prevent such errors since the relevant information was attainable by Encore before it began any proceeding with respect to Keisler's account.

In contrast, Encore asserts that it did not violate FDCPA § 1692e(2)(A) when it sent the validation letter because at the time Keisler received the letter, she knew that she no longer owed BOA the debt due to her bankruptcy. In addition, Keisler "ignored" the debt because she never paid it. In addition, Encore contends that it did not violate FDCPA § 1692c(a)(2) or § 1692e because it did not have actual knowledge of Keisler's bankruptcy or counsel before the validation letter was sent. Encore argues that under *Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004), it is improper

to impute knowledge in BOA's files to Encore. Furthermore, Encore states that its letter was not false and it cannot be liable under § 1692e. Finally, Encore avers that it has a bona fide error defense to both of Keisler's claims because its alleged violations were unintentional, since it had no notice of Keisler's bankruptcy at the time it sent the validation letter, and its alleged violations occurred despite reasonable procedures designed to avoid contacting debtors who have filed bankruptcy and who have counsel.

With respect to Keisler's claim under § 1692c(a)(2),[1] the Court agrees with Encore that *Randolph* defeats Keisler's claim because knowledge in the hands of BOA is not knowledge in the hands of Encore. *Randolph*, 368 F.3d at 729 (stating that "[c]ourts do not impute to debt collectors other information that may be in creditors' files" and "[k]nowledge may be imputed to *agents*, but debt collectors are independent contractors"). Here, the facts are clear that no one at Encore accessed BOA's notes about Keisler's account. Moreover, Keisler presents no evidence that Encore received actual notice from either her, her attorney or the Bankruptcy Court about her bankruptcy until Keisler called Encore on April 20, 2006. Finally, the undisputed facts show that Encore had no reason to access BOA's files about Keisler's account because the process had not gotten beyond the validation stage such that Keisler's account had been assigned to a person who could access BOA's files. Under these facts, Encore has no liability under § 1692c(a)(2).

---

[1] Section 1692c(a)(2) states that "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."

Under § 1692e(2)(A),[2] however, Encore's knowledge of Keisler's bankruptcy is irrelevant, Encore cannot make false statements. *Randolph*, 368 F.3d at 730 (citing *Turner v. J.V.D.B. & Asscocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996)). The measure of whether a statement is false is measured by an objective standard, which "turn[s] not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner*, 330 F.3d at 995. However, as stated by the *Randolph* court: "In lieu of a scienter requirement, the FDCPA provides a defense 'if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Randolph*, 368 F.3d at 730 (quoting 15 U.S.C. § 1692k(c)).

Applying these rules to the facts of the instant case reveals that, there is a material question of fact on both the question of whether Encore violated this provision of the FDCPA by making a false statement and the question of whether Encore has proven its bona fide error defense. With respect to Encore's alleged violations of the FDCPA, under the objective test of whether its validation letter would deceive or mislead an unsophisticated, but reasonable, consumer, the parties' conflicting interpretations for the term "ignore," both reasonable, leads the Court to conclude that a fact finder could find either party's argument persuasive. Likewise, with respect to the representation that Keisler owed BOA on the debt, a fact finder could conclude that Keisler's phone

---

[2]Section 1692e(2)(A) states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . (2) The false representation of - - (A) the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e.

call to Encore during which she informed Encore that she did not owe on the debt because of her bankruptcy is evidence that a reasonable debtor would not be deceived by Encore's letter. But, on the face of the letter, particularly with Encore's use of the term "ignore" in relationship to Keisler's treatment of the debt, a fact finder could conclude that a reasonable consumer would be deceived by the letter and pay the debt.

With respect to Encore's bona fide error defense, at a minimum, there is a material question of fact on whether the violation was unintentional and whether the Encore's procedures were reasonably adapted to avoid any such error. In light of the fact that a reasonable fact finder might conclude that the wording of the letter would be deceiving to an unsophisticated, but reasonable, consumer, the question of whether Encore's actions was unintentional is not one that the Court can decide as a matter of law. Furthermore, the Court cannot, as a matter of law, agree with either party that their interpretation of Encore's automated system is the correct one. A reasonable fact finder could conclude that the extent of Encore's business coupled with its agreements with its customers to provide Encore with correctly-coded accounts for collection makes Encore's system reasonable. However, a fact finder could agree with Keisler that a system in which Encore failed to screen incoming accounts itself by accessing the creditor's records or that a system in which Encore does not wait a day to ensure that the account was collectible two days in a row before sending out a validation letter was reasonably adapted to prevent such errors. Although the Court notes that in *Hyman v. Tate*, 362 F.3d 965 (7th Cir. 2004), the Seventh Circuit affirmed a trial court's finding after a bench trial that procedures similar to Encore's are reasonable, the specifics of the systems involved in *Hyman* were aired out at a trial rather than decided on the record provided for summary judgment.

In summary, the Court concludes that summary judgment in favor of Encore and against Keisler is appropriate on Keisler's claim under 15 U.S.C. § 1692c(a)(2); however, summary judgment is not appropriate on Keisler's claim under 15 U.S.C. § 1692e(2)(A).

## IV.  **CONCLUSION**

For the reasons stated herein, plaintiff's, Dawna L. Keisler, Motion for Summary Judgment is **DENIED**; defendant's, Encore Receivable Management, Inc., Motion to for Summary Judgment is **GRANTED** as to plaintiff's claim under 15 U.S.C. § 1692c(a)(2), but **DENIED** as to plaintiff's claim under 15 U.S.C. § 1692e.

IT IS SO ORDERED this 17th day of April, 2008.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Bonnie Christine Dragotto
PHILIPPS & PHILIPPS LTD
bdragotto@aol.com

David J. Philipps
PHILIPPS & PHILIPPS LTD
davephilipps@aol.com

Mary E. Philipps
PHILIPPS & PHILIPPS LTD
mephilipps@aol.com

Corinne Cantwell Heggie
HINSHAW & CULBERTSON LLP
cheggie@hinshawlaw.com

Paulette F. Hutnick
BERMAN & RABIN, P.A.
phutnick@bermanrabin.com

Daniel S. Rabin
BERMAN & RABIN, P.A.
drabin@bermanrabin.com

David M. Schultz
HINSHAW & CULBERTSON
dschultz@hinshawlaw.com